IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                        )
CAMBRIDGE ISOTOPE                       )
LABORATORIES, INC.,                     )
                                        )
           Plaintiff,                   )
                                        )
     v.                                 )        Court No. 23-00080
                                        )
UNITED STATES,                          )
                                        )
           Defendant.                   )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant
   Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

RUSLAN N. KLAFEHN
Attorney
Office of the Chief Counsel
   for Trade Enforcement &
   Compliance
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230


December 26, 2024

DANIEL BERTONI
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 880-0336
Daniel.Bertoni@usdoj.gov


Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO USCIT R. 56.2(c) ............................ 2

I.   Administrative Decision Under Review .................................. 2

II.  Issues Presented For Review .............................................. 2

STATEMENT OF FACTS ..................................................... 3

I.   Commerce Issues Antidumping And Countervailing Duty
     Orders On Ammonium Sulfate From China............................ 3

II.  The Scope Proceeding ...................................................... 5

SUMMARY OF ARGUMENT .............................................. 7

ARGUMENT.................................................................... 8

I.   Legal Standards ............................................................ 8

     A.   Legal And Regulatory Framework For Scope Rulings .. 8

     B.   Standard Of Review ...................................... 11

II.  Commerce Reasonably Determined That CIL's $^{15}$N-
     Enriched Ammonium Sulfate Is Covered By The Scope
     Of The Orders .......................................................... 13

     A.   Commerce's Determination That The Plain Language
          Of The Scope Description Is Dispositive And Includes
          $^{15}$N-Enriched Ammonium Sulfate Is Supported By
          Substantial Evidence ...................................... 16

     B.   Commerce Was Not Required To Consider Other
          Interpretive Sources Under 19 C.F.R. § 351.225(k)(1)
          After Determining That The Plain Language Of The
          Scope Description Was Dispositive ............................. 22

CONCLUSION ..................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Am. Silicon Techs. v. United States,*
261 F.3d 1371 (Fed. Cir. 2001) ............................................................. 12

*ArcelorMittal Stainless Belg. N.V. v. United States,*
694 F.3d 82 (Fed. Cir. 2012) ......................................................... 20, 21

*Consol. Edison Co. v. NLRB,*
305 U.S. 197 (1938) .............................................................................. 11

*Crawfish Processors All. v. United States,*
483 F.3d 1358 (Fed. Cir. 2007) ............................................................. 11

*Fedmet Res. Corp. v. United States,*
755 F.3d 912 (Fed. Cir. 2014) ............................................................... 12

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996) ............................................................... 12

*Glob. Commodity Grp. LLC v. United States,*
709 F.3d 1134 (Fed. Cir. 2013) ............................................................. 12

*Goldlink Indus. Co. v. United States,*
431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................ 12

*King Supply Co. LLC v. United States,*
674 F.3d 1343 (Fed. Cir. 2012) ....................................................... 13, 20

*Meridian Prods., LLC v. United States,*
851 F.3d 1375 (Fed. Cir. 2017) ..................................................... 9, 11, 22

*Mid Continent Nail Corp. v. United States,*
725 F.3d 1295 (Fed. Cir. 2013) ............................................................. 12

iii

*OMG, Inc. v. United States,*
   972 F.3d 1358 (Fed. Cir. 2020) ............................................................... 22

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States,*
   101 F.4th 1310 (Fed. Cir. 2024) ............................................. 9, 11, 22, 24

*Sandvik Steel Co. v. United States,*
   164 F.3d 596 (Fed. Cir. 1998) ................................................................. 13

*Sango Int'l L.P. v. United States,*
   484 F.3d 1371 (Fed. Cir. 2007) ............................................................... 11

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   776 F.3d 1351 (Fed. Cir. 2015) ................................................................. 9

*Tak Fat Trading Co. v. United States,*
   396 F.3d 1378 (Fed. Cir. 2005) ............................................................... 10

*Universal Camera Corp. v. NLRB,*
   340 U.S. 474 (1951) ................................................................................. 12

## Statutes

19 U.S.C. § 1516a(b) ...................................................................................... 11

19 U.S.C. § 1673e(a)(2) .................................................................................... 9

28 U.S.C. § 2637(d) .................................................................................... 17, 23

## Regulations

19 C.F.R. § 351.225(a) ..................................................................................... 9

19 C.F.R. § 351.225(c) ................................................................................ 17, 23

19 C.F.R. § 351.225(d) ..................................................................................... 6

iv

19 C.F.R. § 351.225(e) ................................................................ 10

19 C.F.R. § 351.225(k) ....................................................... *passim*

19 C.F.R § 351.225(j) ................................................................ 23

## Administrative Determinations

*Ammonium Sulfate From the People's Republic of China: Antidumping Duty and Countervailing Duty Orders,*
    82 Fed. Reg. 13,094 (Dep't of Commerce Mar. 9, 2017) ......................... 4

*Ammonium Sulfate from the People's Republic of China: Final Affirmative Countervailing Duty Determination,*
    82 Fed. Reg. 4,850 (Dep't of Commerce Jan. 17, 2017) ......................... 3

*Ammonium Sulfate from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,*
    82 Fed. Reg. 8,403 (Dep't of Commerce Jan. 25, 2017) ......................... 3

*Ammonium Sulfate from the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value,*
    81 Fed. Reg. 78,776 (Dep't of Commerce Nov. 9, 2016) ......................... 3

*Countervailing Duty Investigation of Ammonium Sulfate from the People's Republic of China: Preliminary Affirmative Determination,*
    81 Fed. Reg. 76,332 (Dep't of Commerce Nov. 2, 2016) ......................... 3

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021) ...................... 9

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                          )
CAMBRIDGE ISOTOPE                         )
LABORATORIES, INC.                        )
                                          )
       Plaintiff,                         )
                                          )
     v.                                 )    Court No. 23-00080
                                          )
UNITED STATES,                            )
                                          )
       Defendant.                         )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade (USCIT R.), defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by plaintiff, Cambridge Isotope Laboratories, Inc. (CIL).  CIL challenges a final scope ruling by the United States Department of Commerce (Commerce) that found that CIL's imports of $^{15}$N-enriched ammonium sulfate from the People's Republic of China (China) are covered by the antidumping and countervailing duty orders on ammonium sulfate from China.  For the reasons below, we

respectfully request that the Court deny CIL's motion for judgment on the agency record and sustain Commerce's final scope ruling.

## STATEMENT PURSUANT TO USCIT R. 56.2(c)

### I.   Administrative Decision Under Review

The administrative determination under review is the final scope ruling finding that the $^{15}$N-enriched ammonium sulfate imported by CIL is within the scope of the antidumping and countervailing duty orders on ammonium sulfate from China.  *See* Final Scope Ruling on Cambridge Isotope Laboratories, Inc. $^{15}$N Enriched Ammonium Sulfate (Mar. 16, 2023); Appx1314-1319.

### II.   Issues Presented For Review

1.   Whether Commerce's finding that CIL's $^{15}$N-enriched ammonium sulfate falls within the scope of the antidumping and countervailing duty orders is supported by substantial evidence and in accordance with law.

2.   Whether Commerce was required to consider other interpretive sources listed in 19 C.F.R. § 351.225(k)(1) to determine whether CIL's $^{15}$N-enriched ammonium sulfate falls within the scope of the antidumping and countervailing duty orders.

2

## STATEMENT OF FACTS

**I.    Commerce Issues Antidumping And Countervailing Duty Orders On Ammonium Sulfate From China**

In November 2016, Commerce published preliminary affirmative determinations in its antidumping and countervailing duty investigations of ammonium sulfate from China.  *See Countervailing Duty Investigation of Ammonium Sulfate from the People's Republic of China: Preliminary Affirmative Determination*, 81 Fed. Reg. 76,332 (Dep't of Commerce Nov. 2, 2016); *Ammonium Sulfate from the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 78,776 (Dep't of Commerce Nov. 9, 2016).  The following January, Commerce published its final affirmative determinations.  *See Ammonium Sulfate from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 82 Fed. Reg. 4,850 (Dep't of Commerce Jan. 17, 2017); *Ammonium Sulfate from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 82 Fed. Reg. 8,403 (Dep't of Commerce Jan. 25, 2017).

On March 9, 2017, following an affirmative material injury determination by the International Trade Commission, Commerce

3

issued the antidumping and countervailing duty orders covering

ammonium sulfate from China (the Orders). *See Ammonium Sulfate*

*From the People's Republic of China: Antidumping Duty and*

*Countervailing Duty Orders*, 82 Fed. Reg. 13,094 (Dep't of Commerce

Mar. 9, 2017). Commerce defined the scope of the merchandise covered

by the Orders as follows:

> The merchandise covered by these orders is
> ammonium sulfate in all physical forms, with or
> without additives such as anti-caking agents.
> Ammonium sulfate, which may also be spelled as
> ammonium sulphate, has the chemical formula
> $(NH_4)_2SO_4$.
>
> The scope includes ammonium sulfate that is
> combined with other products, including by, for
> example, blending (i.e., mixing granules of
> ammonium sulfate with granules of one or more
> other products), compounding (i.e., when
> ammonium sulfate is compacted with one or more
> other products under high pressure), or
> granulating (incorporating multiple products into
> granules through, e.g., a slurry process). For such
> combined products, only the ammonium sulfate
> component is covered by the scope of these orders.
> Ammonium sulfate that has been combined with
> other products is included within the scope
> regardless of whether the combining occurs in
> countries other than China. Ammonium sulfate
> that is otherwise subject to these orders is not
> excluded when commingled (i.e., mixed or
> combined) with ammonium sulfate from sources
> not subject to these orders. Only the subject

component of such commingled products is covered by the scope of these orders.

The Chemical Abstracts Service ("CAS") registry number for ammonium sulfate is 7783-20-2. The merchandise covered by these orders is currently classifiable under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 3102.21.0000. Although this HTSUS subheading and CAS registry number are provided for convenience and customs purposes, the written description of the scope of the orders is dispositive.

*Id.* at 13,094-95.

## II.    <u>The Scope Proceeding</u>

On November 11, 2022, Commerce received a scope ruling request from CIL to determine whether the $^{15}$N-enriched ammonium sulfate — ammonium sulfate with a higher quantity of nitrogen-15 than occurs naturally — that it imported from China falls within the scope of the Orders.  *See* Appx1001-1002.  In its request, CIL argued that its $^{15}$N-enriched ammonium sulfate is not covered by the scope of the Orders because the scope covers only "{a}mmonium sulfate with a chemical formula of $(NH_4)_2SO_4$" and reported the chemical formula of its product as $(^{15}NH_4)_2SO_4$.  CIL also argued that, "while not dispositive, goods covered by the order have a Chemical Abstracts Service (CAS) registry

number of 7783-20-2," whereas it reported its $^{15}$N-enriched ammonium sulfate to have a CAS registry number of 43086-58-4. Appx1012.

On December 14, 2022, Commerce initiated a scope inquiry pursuant to 19 C.F.R. § 351.225(d)(1). Appx1299-1300. On January 13, 2023, the Committee for Fair Trade in Ammonium Sulfate submitted comments stating that it did not oppose Commerce's granting of CIL's request to clarify that its $^{15}$N-enriched ammonium sulfate fell outside the scope of the Orders. *See* Appx1308-1309.

On March 16, 2023, Commerce issued its final scope ruling, concluding that CIL's $^{15}$N-enriched ammonium sulfate falls within the scope of the Orders. Appx1317-1318. Specifically, Commerce found that the language of the Orders was dispositive. Appx1318. As an initial matter, Commerce observed that CIL was not arguing that its $^{15}$N-enriched ammonium sulfate was not ammonium sulfate, but rather asserted that the $^{15}$N-enriched ammonium sulfate contained an increased concentration of the nitrogen-15 isotope. *Id.* Commerce found that enrichment of nitrogen did not bring the product outside of the scope, which covers "ammonium sulfate in all physical forms." *Id.* Commerce also found that $^{15}$N-enriched ammonium sulfate fell within

6

the "chemical formula defined in the language of the scope of the Orders" because the ammonium in the formula $(NH_4)_2SO_4$ "already includes $^{15}N$" and the enrichment process only changed the relative concentration of $^{15}N$ in the ammonium sulfate. *Id.* Lastly, Commerce dismissed CIL's arguments based on different CAS registry numbers because the Order made clear that the CAS registry number was not dispositive but was "provided for convenience and customs purposes" only. *Id.*

Because Commerce found that the plain language of the scope description was dispositive in determining whether $^{15}N$-enriched ammonium sulfate is covered by the scope of the Orders, Commerce did not consider the additional interpretive sources set forth in 19 C.F.R. § 351.225(k)(1), or the criteria of 19 C.F.R. § 351.225(k)(2), which sets forth additional factors for Commerce to consider when the (k)(1) factors are not dispositive.

## SUMMARY OF ARGUMENT

First, Commerce reasonably determined that CIL's $^{15}N$ ammonium sulfate is covered by the scope of the Orders. The scope of the Orders covers "ammonium sulfate in all physical forms." The record

evidence demonstrates that ammonium sulfate naturally contains a small concentration of the nitrogen-15 isotope. CIL's $^{15}$N-enriched ammonium sulfate remains ammonium sulfate, even if has been enriched to have a higher concentration of nitrogen-15. Therefore, under the plain language of the scope description, $^{15}$N-enriched ammonium sulfate is covered by the Orders. Additionally, although the CAS registry provides a separate number for $^{15}$N ammonium sulfate, the Orders explain that the written description controls and the CAS registry number for ammonium sulfate is not dispositive.

Second, once Commerce determined that the plain language of the Orders answered the scope question, Commerce was not required to analyze additional interpretive sources under 19 C.F.R. § 351.225(k)(1) to determine whether $^{15}$N ammonium sulfate is covered by the scope of the Orders.

## ARGUMENT

## I.   Legal Standards

### A.   Legal And Regulatory Framework For Scope Rulings

When Commerce publishes an antidumping or countervailing duty order, it defines the scope of the order and "includes a description of the

8

subject merchandise, in such detail as {Commerce} deems necessary."
19 U.S.C. § 1673e(a)(2). Commerce is often called upon to determine
whether a certain product is included within the scope of an
antidumping or countervailing duty order because it necessarily writes
scope language in general terms. *Meridian Prods., LLC v. United
States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017); *see also* 19 C.F.R.
§ 351.225(a).

When Commerce confronts such a question, it follows the
analytical framework and procedures set forth in its regulations. 19
C.F.R. § 351.225; *see Shenyang Yuanda Aluminum Indus. Eng'g Co. v.
United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("There is no
specific statutory provision governing the interpretation of the scope of
antidumping or countervailing orders.").

In 2021, Commerce amended its regulation for answering scope
questions. *See Regulations to Improve Administration and Enforcement
of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300,
52,322-52,323 (Dep't of Commerce Sept. 20, 2021); *codified at* 19 C.F.R.
§ 351.225(k); *see Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*,
101 F.4th 1310, 1323-24 (Fed. Cir. 2024). Pursuant to the amended

regulation, Commerce may determine whether a product is within the scope of an order by relying on the scope language alone, if such language is dispositive.  19 C.F.R. § 351.225(k)(1).  Commerce also has the discretion to consider additional primary and secondary sources listed in section 351.225(k)(1).  Primary (k)(1) sources include descriptions from the petition and investigation, prior Commerce determinations relating to the same order or other orders with similar language, or prior International Trade Commission determinations relating to the same order.  *Id.* § 351.225(k)(1)(i).  Secondary (k)(1) sources include other Commerce or International Trade Commission determinations, industry usage, and dictionaries.  *Id.* § 351.225(k)(1)(ii).  To the extent such secondary sources conflict with the primary sources, however, the primary sources "will normally govern."  *Id.*

If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling deciding whether the product falls within the order's scope.  *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  The (k)(1) sources are

"dispositive" when they "definitively answer the scope question." *Sango Int'l, L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

Only when the (k)(1) sources are not dispositive will Commerce consider the five criteria set forth in paragraph (k)(2): (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2). *See Saha Thai Steel Pipe*, 101 F.4th at 1325; *Meridian*, 851 F.3d at 1382.

## B. <u>Standard Of Review</u>

In reviewing Commerce's scope determinations, the Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Sango Int'l*, 484 F.3d at 1378 (quoting 19 U.S.C. § 1516a(b)(1)(B)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors All. v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ("{s}ubstantial evidence is more than a mere scintilla").

But "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (cleaned up).

In particular, the Court grants "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Glob. Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because scope rulings are "highly fact-intensive and case-specific," *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918

(Fed. Cir. 2014) (quoting *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)), making scope ruling determinations "particularly within the expertise of {Commerce}," *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

## II. Commerce Reasonably Determined That CIL's $^{15}$N-Enriched Ammonium Sulfate Is Covered By The Scope Of The Orders

Commerce relied on the plain language of the Orders and the description of the products contained in CIL's scope ruling request to determine that CIL's $^{15}$N-enriched ammonium sulfate is covered by the Orders.  The scope of the Orders specifically includes "ammonium sulfate in all physical forms" and provides that "Ammonium sulfate . . . has the chemical formula $(NH_4)_2SO_4$." Appx1315.  The scope language makes no reference to the number of neutrons in the nucleus of each nitrogen atom, the relative abundance of nitrogen isotopes, or the molecular weight of ammonium sulfate. *Cf.* Pl. Br. 8-10.  Accordingly, Commerce examined the record evidence and found that $^{15}$N-enriched ammonium sulfate is ammonium sulfate and that it falls within the chemical formula set out in the scope.  Appx1318.

13

CIL explained in its scope ruling application that nitrogen is composed of two stable isotopes, $^{14}$N and $^{15}$N, with natural abundances of 99.63% $^{14}$N and 0.37% $^{15}$N. Appx1128. $^{15}$N-enriched ammonium sulfate is produced by increasing the concentration of the $^{15}$N isotope (which is naturally 0.37%) to "10% or the desired level." *Id.*; *see also* Appx1013 ("Nitrogen represents about 78% of Earth's atmosphere and the majority of it exists as $^{14}$N while only 0.37% is $^{15}$N in naturally abundant materials. To produce $^{15}$N enriched ammonium sulfate, nitrogen isotopes must be separated; and the $^{15}$N isotope, which is naturally 0.37%, must be enriched to higher levels"). Therefore, CIL's $^{15}$N-enriched ammonium sulfate remains ammonium sulfate, just with a higher proportion of nitrogen-15, which is achieved through an enrichment process. *See* Appx1013; Appx1128.

Commerce found that the enrichment process did not take $^{15}$N-enriched ammonium sulfate "outside the scope of the chemical formula defined in the language of the scope of the Orders" because the "ammonium in this formula $(NH_4)_2SO_4$ already includes $^{15}$N," just in a different proportion. *See* Appx1318. Commerce also explained that the scope covers "ammonium sulfate in all physical forms," which further

14

supported its finding that the scope covered ammonium sulfate

regardless of any enrichment.  *Id.*  On that basis, Commerce found that

the plain language is dispositive and that CIL's [15]N-enriched

ammonium sulfate is encompassed by the chemical formula $(NH_4)_2SO_4$,

as described in the scope.  *Id.*

CIL argues that its [15]N-enriched ammonium sulfate is not within

the scope of the Orders.  *See generally* Mem. of Law in Support of Pl.

Rule 56.2 Mot. for Judgment on the Agency Record (Pl. Br.), ECF No.

37-2.  First, CIL contends that the plain language of the scope of the

Orders unambiguously *excludes* CIL's [15]N-enriched ammonium sulfate.

*Id.* at 25-31.  CIL first argues that the scope of the Orders covers only

"ammonium sulfate that has the chemical formula of $(NH_4)_2SO_4$, and a

CAS number of 7783-20-2, whereas the subject merchandise has a

chemical formula of $(^{15}NH_4)_2SO_4$, and a CAS number of 43086-58-4."

*See* Pl. Br. at 23.  Alternatively, CIL contends that because of the

difference in the proportion of nitrogen isotopes in what otherwise is a

chemical formula for ammonium sulfate, and the different CAS registry

numbers, the plain language is ambiguous, and Commerce was required

to engage in a (k)(1) analysis.  Pl. Br. 31-36.  As discussed below, these

15

arguments misunderstand the text of the Orders and misapprehend the relevant legal framework.

**A.    Commerce's Determination That The Plain Language Of The Scope Description Is Dispositive And Includes $^{15}$N-Enriched Ammonium Sulfate Is Supported By Substantial Evidence**

CIL argues that the language of the Orders, which covers "ammonium sulfate in all physical forms," Appx1315, unambiguously excludes $^{15}$N-enriched ammonium sulfate.  *See* Pl. Br. 25.  Yet CIL never states — nor could it — that $^{15}$N-enriched ammonium sulfate is not ammonium sulfate.  As set forth above, Commerce reasonably found that the scope language covers $^{15}$N-enriched ammonium sulfate:  $^{15}$N-enriched ammonium sulfate is still ammonium sulfate and Commerce found that it falls within the scope of the Orders.  Appx1318.

CIL's first argument concerns the scope language covering ammonium sulfate "in all physical forms."  Pl. Br. 26-29.  According to CIL, the reference to "physical forms" in the scope relates to states of matter.  *Id.*  In support, CIL cites Wikipedia and argues that the common meaning of "form" is states of matter and also asserts without citation to any authority that certain "investigative" documents describe

16

ammonium sulfate in terms of pellet or aqueous form rather than products with different chemical structures.  *See id.* at 27-29.

However, these definitions and "investigative" documents were not presented to Commerce at the administrative level and are therefore not a part of the record before this Court.  *See* 28 U.S.C. § 2637(d) (requiring exhaustion of administrative remedies).  Scope-ruling applicants must include "{t}o the extent reasonably available to the applicant . . . {f}actual information supporting the applicant's position, including . . . relevant excerpts of other documents identified in paragraph (k)(1) of this section."  19 C.F.R. § 351.225(c)(2)(viii)-(ix).  Paragraph (k)(1) explicitly includes dictionaries.  *See* 19 C.F.R. § 351.225(k)(1)(ii).

Therefore, Commerce's regulations require that the scope applicant provide dictionary definitions that it deems relevant in its application to the extent reasonably available.  *See* 19 C.F.R. §§ 351.225(c)(2)(viii)-(ix), (k)(1)(ii).  Question 8 of the Scope Application explicitly instructs applicants to provide " . . . dictionaries, and any other relevant record evidence along with a narrative explanation regarding how each document supports" their position.   Appx1012.

CIL's response to this question references the definition of "ammonium sulfate" from the American Heritage Dictionary and the CAS registry but does not propose a definition for "physical form." *Id.* Thus, if CIL wanted to present argument regarding how "all physical forms" should be interpreted, it was required to have done so during the proceedings before Commerce.

In any event, CIL's proposed meaning of "all physical forms" is internally inconsistent. CIL claims that a meaning of that phrase that covers both unenriched ammonium sulfate and $^{15}$N-enriched ammonium sulfate would improperly "include products that have a different chemical formula or structure." Pl. Br. 27. CIL focuses on the superscript "15" to argue that the increased abundance of nitrogen-15 in $^{15}$N-enriched ammonium sulfate moves the enriched product outside the scope of the Orders because the product can be expressed by a different chemical formula. *Id.* at 30; *see also* Appx1012 ("The chemical formula, however, for CIL's enriched ammonium sulfate is ($^{15}$NH$_4$)$_2$SO$_4$ . . . which reflects the difference between it and Ammonium sulfate with a chemical formula of (NH$_4$)$_2$SO$_4$.").

But CIL acknowledges that nitrogen naturally occurs in two isotopic forms, such that any sample of ammonium sulfate — enriched or not — would contain some molecules with a nitrogen-15 atom alongside others with nitrogen-14 atoms. *See* Pl. Br. 11; Appx1013; Appx1128. Commerce's scope ruling cited evidence demonstrating that the "N" in $(NH_4)_2SO_4$ includes the nitrogen-15 isotope such that [15]N-enriched ammonium sulfate does not lie "outside the scope of the chemical formula" set out in the scope. Appx1318. Therefore, CIL's [15]N-enriched ammonium sulfate meets the description and chemical formula as written in the scope regardless of how "physical form" is interpreted.

CIL also relies on the end use of its [15]N-enriched ammonium sulfate to argue that it is not covered by the scope. *See* Pl. Br. 19 ("{T}he trade and industry do not consider [15]N isotopically enriched ammonium sulfate used for laboratory research to be ammonium sulfate."). Thus, CIL argues that there are "meaningful" differences between the enriched and unenriched ammonium sulfate because unenriched ammonium sulfate cannot be used for metabolic labeling in quantitative proteomics. *Id.* at 29. According to CIL, the Court must

19

read the scope language in that "proper context." *Id.* 29 (discussing

*ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88

(Fed. Cir. 2012)).

CIL's argument is misplaced.  First, the scope description is not

limited to particular end uses for ammonium sulfate.  When

interpreting scope language, Commerce will not impose an end-use

restriction unless the order "includes clear exclusionary language"

leaving "no reasonable doubt" that products are excluded "based solely

on {their} end use." *King Supply*, 674 F.3d at 1349.  No such language is

present in this scope, which does not refer to any use of the ammonium

sulfate.  *See* Appx1315-1316.  Accordingly, Commerce did not consider

persuasive CIL's arguments regarding the end use of its product.

Appx1318.

Moreover, *ArcelorMittal* does not stand for a contrary proposition.

In that case, the scope language at issue covered certain steel plate

products that were "4.75 mm or more in thickness."  *ArcelorMittal*, 694

F.3d at 86.  The parties disputed whether "thickness" referred to actual

thickness (the measured thickness of delivered product) or nominal

thickness (measurement purchasers use when ordering the product at

20

issue). *Id.* at 87-88. In finding that "thickness" referred to actual thickness, the Court held that "antidumping duty orders apply to goods as imported, not as they may have been ordered. Thus, the proper context in which to interpret the scope of the antidumping duty order is the industry practice regarding *delivered* products." *Id.* at 88.

In this case, however, no such ambiguity exists. All parties agree that CIL's product is ammonium sulfate and Commerce found that [15]N-enriched ammonium sulfate is covered by the chemical formula outlined in the scope. Appx1318. As delivered, CIL's [15]N-enriched ammonium sulfate remains ammonium sulfate. *See ArcelorMittal*, 694 F.3d at 88.

Finally, CIL's reliance on the separate CAS registry number for [15]N ammonium sulfate is misplaced. As an initial matter, the scope of the Orders explicitly states that the CAS registry number is not dispositive: "{a}lthough this HTSUS subheading and CAS registry number are provided for convenience and customs purposes, the written description of the scope of the Orders is dispositive." In other words, although the CAS registry number may be helpful in assisting the enforcement of the Orders, it does not override the actual physical

description of the merchandise provided in the scope, which Commerce

found dispositive.  *See* Appx1318.

### B. Commerce Was Not Required To Consider Other Interpretive Sources Under 19 C.F.R. § 351.225(k)(1) After Determining That The Plain Language Of The Scope Description Was Dispositive

Because the plain language includes [15]N-enriched ammonium

sulfate within the scope of the Orders, Commerce properly denied CIL's

scope application without needing to consider the factors listed in

paragraph (k)(1) of 19 C.F.R. § 351.225.  Appx1318; *see Saha Thai Steel*

*Pipe*, 101 F.4th at 1326 ("{I}f the scope cannot be clearly and

dispositively discerned based on the scope language itself, Commerce

must turn to the aid of the (k)(1) and, if still necessary, (k)(2) sources."

(citing *OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020)

and *Meridian*, 851 F.3d at 1382)).

Now, for the first time, CIL argues in the alternative that the

language of the scope description might be ambiguous and that

Commerce should have engaged in an analysis of (k)(1) interpretive

sources to answer the question of whether the scope of the Orders

includes [15]N-enriched ammonium sulfate.  Pl. Br. 31.  But CIL failed to

argue before Commerce that a (k)(1) analysis was necessary to

22

determine whether $^{15}$N-enriched ammonium sulfate is within the scope of the Orders.  Because it did not make that argument, the Court should find that CIL failed to exhaust its administrative remedies with respect to this issue.  *See* 28 U.S.C. § 2637(d).  Scope-ruling applicants are required support their position "with specific reference to paragraph (j) and (k)."  19 C.F.R. § 351.225(c)(viii).  And Commerce's scope ruling application requests that applicants "{r}eferenc{e} 19 CFR 351.225(j) and 19 CFR 351.225(k)."  *See* Appx1009.  Therefore, CIL was given an opportunity to make this argument before Commerce and to explain what (k)(1) sources it believes support its views.  But rather than suggesting that Commerce look to (k)(1) sources, CIL maintained before Commerce that the plain language of the scope description was dispositive such that Commerce was not required to consult further sources.  *See* Appx1013.

Regardless, even if Commerce *could* have consulted (k)(1) sources in its analysis, it does not follow that Commerce was *required* to do so.  Under Commerce's regulations, examination of the (k)(1) sources in determining whether a product lies within scope is permissive:

> In determining whether a product is covered by
> the scope of the order at issue, the Secretary will

> consider the language of the scope *and may make its determination on this basis alone* if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive.

19 C.F.R. § 351.225(k)(1) (emphasis added). The regulations continue:

> The following primary interpretive sources *may* be taken into account under paragraph (k)(1) introductory text of this section, *at the discretion of the Secretary*.

*Id.* § 351.225(k)(1)(i) (emphasis added); *see Saha Thai Steel Pipe*, 101 F.4th at 1326-27 (acknowledging that Commerce may proceed without considering the (k)(1) factors if the scope is "clearly and dispositively discerned based on the scope language itself").

In its final scope ruling, Commerce found that CIL's [15]N-enriched ammonium sulfate fell within the scope of the Orders that covered "ammonium sulfate in all physical forms." Appx1318. Commerce was not required to engage in a further analysis of the (k)(1) sources after determining that the plain language of the scope description was dispositive. *See* 19 C.F.R. § 351.225(k)(1); *Saha Thai Steel Pipe*, 101 F.4th at 1326-27.

## CONCLUSION

For these reasons, we respectfully request that the Court deny CIL's motion for judgment on the agency record, sustain Commerce's scope ruling, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

/s/ Daniel Bertoni

RUSLAN KLAFEHN
Attorney
Office of the Chief Counsel
   for Trade Enforcement
   & Compliance
U.S. Department of Commerce

DANIEL BERTONI
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Ben Franklin Station
P.O. Box 480
Washington, DC 20044
(202) 880-0336
Daniel.Bertoni@usdoj.gov

December 26, 2024

Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing response complies with the Rules of the United States Court of International Trade and the Court's September 20, 2024 scheduling order, ECF No. 36, because it contains 4,335 words, including text, footnotes, and headings.

<u>      /s/ Daniel Bertoni      </u>

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| CAMBRIDGE ISOTOPE LABORATORIES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 23-00080 |
| UNITED STATES, | ) | |
| Defendant. | ) | |

_____

## <u>ORDER</u>

Upon consideration of the plaintiff's motion for judgment on the agency record, defendant's response, and all other pertinent papers, it is hereby

ORDERED, that the plaintiff's motion is denied; and it is further

ORDERED, that the underlying scope ruling is sustained; and it is further

ORDERED, that final judgment is entered for the United States.

_____

M. Miller Baker, Judge

Dated: _____, 2025
New York, New York