UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. M. MILLER BAKER, JUDGE

_____

CAMBRIDGE ISOTOPE LABORATORIES INC. :
                                     :
                                     :
              Plaintiff,             :
                                     : Court No. 23-00080
        v.                           :
                                     :
UNITED STATES,                       :
                                     :
              Defendant.             :
_____

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT UPON
THE AGENCY RECORD**

George R. Tuttle, III
Law Offices of George R. Tuttle, A.P.C.
3950 Civic Center Drive, Ste 310
San Rafael, CA 94903
Direct: (415) 288-0428
Office: (415) 986-8780
Email: geo@tuttlelaw.com
*Attorney for Cambridge Isotope Laboratories*

Dated: January 23, 2025

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

# TABLE OF CONTENTS

I.    COMMERCE ERRONEOUSLY INTERPRETED AND
      EXPANDED THE SCOPE OF THE ORDERS BY
      DETERMINING, WITHOUT SUBSTANTIAL EVIDENCE
      ON THE RECORD, THAT CAMBRIDGE'S [15]N-ISOTOPIC
      AMMONIUM SULFATE IS WITHIN THE SCOPE ....................... 6

A.    Commerce's Determination That the Plain Language of
      The Scope Description Includes Cambridge's [15]N -
      Enriched Ammonium Sulfate Is Not Supported by
      Substantial Evidence ............................................................. 8

B.    If the Scope Language is Ambiguous with Respect to Its
      Inclusion of Cambridge's [15]N Isotopically Enriched
      Ammonium Sulfate the Department Must Consider the K-
      1 Factors ................................................................................ 19

II.   CONCLUSION ................................................................. 30

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

## TABLE OF AUTHORITIES

**CASES**

Arcelormittal Stainless Belg. N.V. v. United States, 35 C.I.T. 796
(2011 Ct. Intl. Trade)......................................................................16

Arcelormittal Stainless Belg. N.V. v. United States, 694 F.3d 82
(Fed. Cir. 2012) .............................................................16, 17, 18

Atkore Steel Components v. United States, 313 F.Supp.3d 1374
(Ct. Int'l Trade, 2018). ...............................................................7, 28

Coltec Indus., Inc. v. United States, 454 F.3d 1340 (Fed. Cir. 2006).....20

Duferco Steel, Inc. v. United States, 296 F.3d 1087 (Fed. Cir.
2002)............................................................................................6, 9

Eckstrom Indus., Inc. v. United States, 254 F.3d 1068 (Fed. Cir.
2001)................................................................................................10

Hardware Res., Inc. v. United States, 2024 Ct. Intl. Trade LEXIS
139, *12 ..........................................................................................22

Kirovo-Chepetsky Khimichesky Kombinat, JSC v. United States,
58 F. Supp. 3d 1397 (Ct. Intl. Trade 2015) .................................21

Magnum Magnetics Corp. v. United States, 657 F. Supp. 3d 1387
(Ct. Intl. Trade 2023)......................................................................7

Meridian Prods., LLC v. United States, 851 F.3d 1375 (Fed. Cir.
2017)………………………………………………………6, 8, 20, 21, 23, 28

Mid Continent Nail Corp. v. United States, 725 F.3d 1295 (Fed.
Cir. 2013) .........................................................................................6

Midwest Fastener Corp. v. United States, 335 F. Supp. 3d 1355
(Ct. Intl. Trade 2018)......................................................................25

Novosteel SA v. United States, 284 F.3d 1261 (Fed. Cir. 2002).......21, 22

OMG, Inc. v. United States, 321 F. Supp. 3d 1262 (Ct. Intl. Trade

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

2018)..............................................................................................8

Polites v. United States, 755 F. Supp. 2d 1352 (Ct. Intl. Trade
    2011)....................................................................................21, 25

Sango Int'l L.P. v. United States, 484 F.3d 1371 (Fed. Cir. 2007) ...20, 25

Star Pipe Prods, v. United States, 365 F. Supp. 3d 1277 (Ct. Intl.
    Trade 2019)....................................................................25, 26, 27

Tak Fat Trading Co. v. United States, 396 F.3d 1378 (Fed. Cir.
    2005)................................................................................................6

TMB 440AE, Inc. v. United States, 399 F. Supp. 3d 1314 (Ct. Intl.
    Trade 2019)...........................................................................27, 28

Wheatland Tube Co. v. United States, 161 F.3d 1365 (Fed. Cir.
    1998)..............................................................................................10

## STATUTES AND REGULATIONS

19 C.F.R. § 351.225(k)(1) ................................................................. passim

19 C.F.R. § 351.225(k)(2) .........................................................................20

## ADMINISTRATIVE DECISIONS

Antidumping Duty and Countervailing Duty Orders: Ammonium
    Sulfate From the People's Republic of China (the "Orders"),
    82 Fed. Reg. 13,094 (Mar. 9, 2017)....................................................2

Notice of Scope Rulings, A-570-049 and C-570-050; Ammonium
    Sulfate from China, 88 Fed. Reg. 32731 (May 22, 2023).................2

Uranium from Kazakhstan, Kyrgyzstan, Russia, Tajikistan,
    Ukraine, and Uzbekistan (57 Fed. Reg. 23,380, June 3, 1992).....14

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

## OTHER AUTHORITIES

*Department of Energy's publication "DOE explains Isotopes"*...............14

*ITC Conference Transcript re Ammonium Sulfate from China,*
    June 15, 2016.........................................................................12, 13

*Oxford English Dictionary* (2d ed. 1989)................................................20

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. M. MILLER BAKER, JUDGE

_____

| | |
|---|---|
| CAMBRIDGE ISOTOPE LABORATORIES INC. | : |
| | : |
| | : |
| | : |
| Plaintiff, | : |
| | : Court No. 23-00080 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

_____

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT
UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of

International Trade, Cambridge Isotope Laboratories Inc. (hereinafter

"Cambridge" or "plaintiff"), responds to Defendant's Reply to Plaintiff's

Rule 56.2 Motion for Judgement on the Agency Record.

The memorandum in support of Cambridge's motion (the

"Memorandum") explained the basis for Cambridge's position that the

Commerce Department erred in its March 16, 2023 final scope ruling[1]

_____

[1] *Antidumping Duty and Countervailing Duty Orders on Ammonium
Sulfate from the People's Republic of China*: Final Scope Ruling on

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

(the "decision") in concluding that Cambridge's $^{15}$N enriched

ammonium sulfate is within the scope of the *Antidumping Duty and*

*Countervailing Duty Orders: Ammonium Sulfate From the People's*

*Republic of China* (the "Orders")[2], 82 Fed. Reg. 13,094 (Mar. 9, 2017).

Appx1317-1318.

Accordingly, Cambridge urges this court to find that the scope

ruling on Cambridge's $^{15}$N enriched ammonium sulfate is not supported

by substantial evidence on the record and is otherwise not in

accordance with law, and to remand the determination back to the

_____

Cambridge Isotope Laboratories, Inc. $^{15}$N Enriched Ammonium Sulfate
from Eva Kim, International Trade Compliance Analyst, Office IV,
Antidumping and Countervailing Duty Operations through Eric
Greynolds, Director, Office IV, Antidumping and Countervailing Duty
Operations to James Maeder, Deputy Assistant Secretary for
Antidumping and Countervailing Duty Operations ("Scope Ruling")
Public Document. Appx1314-1319. *See* also *Notice of Scope Rulings, A-570-049 and C-570-050; Ammonium Sulfate from China*, 88 Fed. Reg.
32731 (May 22, 2023)

[2] The scope language of the Antidumping and Countervailing Duty
Orders on *Ammonium Sulfate from the People's Republic of China (A-570-049 and C-570-050)* are identical and for purpose of brevity,
Plaintiff will primarily refer to the Department's Antidumping Duty
Order.

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

Commerce Department ("Commerce" or "Department") with

instructions to determine that $^{15}$N enriched ammonium sulfate is

excluded from the Orders. Alternatively, Cambridge requests that this

Court remand this matter back to Commerce with instructions to

initiate a formal scope inquiry to examine the factors set forth in 19

C.F.R. § 351.225(k)(1).

The brief filed by the Government ("Def Resp") urges this Court

to affirm Commerce's unsubstantiated determination that Cambridge's

$^{15}$N enriched ammonium sulfate falls within the description of

ammonium sulfate subject to the Orders.

There is no question that Cambridge's $^{15}$N enriched ammonium

sulfate is an isotopic form of ammonium sulfate[3], but to equate the two

is scientifically illogical and negates the purposes of the Orders. As

discussed in further detail below, Commerce erroneously interpreted

and expanded the scope of the Orders by determining, without

_____

[3] See Plaintiff's Exhibit A: CBP Ruling HQ H328353, June 9, 2023
(Internal Advice; Classification of 15N-isotopic Ammonium Sulfate).
We respectfully submit this document to be added to the record as it
was released after the scope determination.

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

substantial evidence on the record, that Cambridge's $^{15}N$ enriched

ammonium sulfate, with a chemical nomenclature[4] of $(^{15}NH_4)_2SO_4$, and

CAS registry number of 43086-58-4, is within the scope. The minute

concentration of naturally occurring nitrogen-15 isotope (.37%) in the

atmosphere and in naturally occurring nitrogen that is a component of

the ammonium sulfate that is described in the scope of the Orders do

not demonstrate that $^{15}N$ enriched ammonium sulfate is included

under the plain language of the scope. Both the chemical description

and CAS registry number (though not dispositive), demonstrate that

Commerce did not consider $^{15}N$ enriched ammonium sulfate when it

described the product subject in the Orders. Further, while not

dispositive, the scope language identifies merchandise covered by the

Orders is classifiable under HTSUS subheading 3102.11.0000, which

covers "Mineral or chemical fertilizers, nitrogenous: Ammonium

---

[4] "Long before chemists knew the formulas for chemical compounds, they developed a system of nomenclature that gave each compound a unique name. Today we often use chemical formulas, such as $NaCl$, $C_{12}H_{22}O_{11}$, and $Co(NH_3)_6(ClO_4)_3$, to describe chemical compounds." https://chemed.chem.purdue.edu/genchem/topicreview/bp/ch2/names.html (last visited January 23, 2025.)

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

sulfate; double salts and mixtures of ammonium sulfate and

ammonium nitrate: Ammonium sulfate." Per the binding letter ruling

HQ H328353 (Plaintiff's Exhibit A hereto), dated June 9, 2023 (which

was *after* the scope application was submitted (11/11/22) and *after* the

scope ruling was released (3/16/23)), CBP's Office of Regulations and

Rulings reversed a decision by the Port, and determined that

Cambridge's $^{15}$N enriched ammonium sulfate is classified as an isotope

under 2845.90.0100, HTSUS, and not as a fertilizer under

3102.21.0000, HTSUS.

It is Plaintiff's position that Cambridge's $^{15}$N ammonium sulfate

is unambiguously excluded from the scope of the Orders because they

describe only ammonium sulfate with naturally occurring nitrogen. If,

however, the Court determines that the scope of the Orders is

ambiguous as to whether they were intended to include $^{15}$N ammonium

sulfate, then the case must be remanded back to Commerce to analyze

the interpretive sources under 19 C.F.R. § 351.225 (k)(1) to determine

whether $^{15}$N ammonium sulfate is covered by the scope of the Orders.

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

## ARGUMENT

## I.    Commerce Erroneously Interpreted and Expanded the Scope of the Orders by Determining, Without Substantial Evidence on The Record, That Cambridge's $^{15}$N-Isotopic Ammonium Sulfate Is Within the Scope

As Commerce and this court have made clear, the first step in a

scope determination is to look at the language of the Order itself.

("Commerce must first examine the language of the final order. *Mid*

*Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir.

2013), citing *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382

(Fed. Cir. 2005) and *Duferco Steel, Inc. v. United States*, 296 F.3d 1087,

1089 at 1097 (Fed. Cir. 2002).) The inquiry begins with the language of

the order "to determine whether it contains an ambiguity and, thus, is

susceptible to interpretation." *Meridian Prods., LLC v. United States*,

851 F.3d 1375 (Fed. Cir. 2017) at 1381. Scope terms are "unambiguous"

if they have "a single clearly defined or stated meaning." *Id.,* at 1381

n.7. *See also Mid Continent Nail Corp. v. United States*, 725 F.3d

1295, 1302 (Fed. Cir. 2013) (Citations omitted).  In drafting the scope

language, the Department specifically chose to identify the scope

merchandise not just by name, but to also include its chemical

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

description and its CAS registry number.  The chemical description
and CAS registry number for Cambridge's [15]N enriched ammonium
sulfate are both different from that described by Commerce in its
written scope description.

It is the contention of Plaintiff that the merchandise in question,
[15]N enriched ammonium sulfate, chemical nomenclature $(^{15}NH_4)_2SO_4$,
and CAS registry number of 43086-58-4, is not explicitly included in
the scope of the Order on Ammonium Sulfate from China.

As such, the plain language of the Orders unambiguously[5]
excludes Cambridge's [15]N isotopically enriched ammonium sulfate.
Alternatively, the presence of the specific chemical description and
CAS number for the Ammonium Sulfate subject to the scope of the
Orders, and the fact that Cambridge's [15]N isotopically enriched
ammonium sulfate has a different chemical description and CAS

---

[5] "Scope terms are 'unambiguous' if they have 'a single clearly defined
or stated meaning.'" (citation omitted)). *Magnum Magnetics Corp. v.
United States*, 657 F. Supp. 3d 1387, 1394 (Ct. Intl. Trade 2023); see
also *Atkore Steel Components v. United States*, 313 F.Supp.3d 1374,
1380 (Ct. Intl Trade 2018).

7

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

number renders the scope of the Orders ambiguous.

"[T]he question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that we [the court] review de novo." (Emphasis Added). *Meridian Prods., LLC v. United States*, 851 F.3d at 1382. See *OMG, Inc. v. United States*, 321 F. Supp. 3d at 1268 (Ct. Intl. Trade 2018).

### A.    Commerce's Determination That the Plain Language of The Scope Description Includes Cambridge's [15]N -Enriched Ammonium Sulfate Is Not Supported by Substantial Evidence

The scope of the Orders specifically includes "ammonium sulfate in all physical forms" and provides that "Ammonium sulfate . . .has the chemical nomenclature $(NH_4)_2SO_4$." Appx1315. The fact remains that Cambridge's [15]N enriched ammonium sulfate, which has the chemical nomenclature of $(^{15}NH_4)_2SO_4$, is not ammonium sulfate **with** the chemical nomenclature $(NH_4)_2SO_4$ as presented in the scope of the Order. Cambridge's [15]N ammonium sulfate, with CAS number 43086-58-4, is not ammonium sulfate, with CAS number 7783–20–2, as used in the language of the Orders.

8

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

    The parties agree that the scope language makes no reference to the number of neutrons in the nucleus of each nitrogen atom, the relative abundance of nitrogen isotopes, or the molecular weight of ammonium sulfate. Memorandum, 8-10. The government asserts that this is reason enough to conclude that $^{15}$N enriched ammonium sulfate is included in the Orders. Def Resp 13. However, the court has held that subject merchandise may be included in-scope only if the scope language specifically includes the merchandise or may be reasonably interpreted to include it. *Duferco Steel, Inc. v. United States,* 296 F.3d 1087, 1089 (Fed. Cir., 2002).  The assumption that the silence of the scope language on isotopes or molecular weight permits Commerce to interpret $^{15}$N isotopic enriched ammonium sulfate as within the scope of the Orders is the opposite of well-established principle. Here, the plain scope language does not reference $^{15}$N enriched ammonium sulfate or isotopes, and thus it is not in accordance with law for Commerce to have determined that the plain language of the Orders **direct** that such products are intended to be in-scope. It is well-established that "Commerce cannot 'interpret' an antidumping order so

9

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

as to change the scope of that order, nor can Commerce interpret an

order in a manner contrary to its terms." *Eckstrom Indus., Inc. v.*

*United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) quoting *Wheatland*

*Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998). As

such, the decision by Commerce is not supported by substantial

evidence and was not otherwise made in accordance with law.

The Government argues that Commerce's interpretation is

reasonable that the enrichment process did not take $^{15}$N-enriched

ammonium sulfate "outside the scope of the chemical nomenclature

defined in the language of the scope of the Orders" because the

"ammonium in this formula $(NH_4)_2SO_4$ already includes $^{15}$N," just in a

different proportion. See Appx1318 and Def Resp 14. The fact that the

nitrogen-15 isotope occurs naturally in a very small concentration

(.37%) does not demonstrate that $^{15}$N enriched ammonium sulfate that

has 5, 10, or 99% $^{15}$N enriched Nitrogen was intended to be included

under the plain language of the scope. Commerce reached its incorrect

conclusion because it failed to take the record evidence into account as

it made no serious attempt to understand the product or review the

10

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

scientific evidence in the record. The Department cannot disregard the

difference in concentration (less than half of 1 percent compared to the

10% or more) of the $^{15}N$ isotope in Cambridge's enriched ammonium

sulfate product, compared to the ammonium sulfate described in the

Orders. Similarly, the Department cannot disregard the enrichment

process required to produce Cambridge's $^{15}N$ enriched ammonium

sulfate, which is complex, very expensive, and time consuming.

Commerce claims that the *Orders* cover "ammonium sulfate in

all physical forms" and that Cambridge's $^{15}N$ enriched isotopic

ammonium sulfate is therefore within the scope of the Orders. Final

Scope Ruling at page 5. Appx1318. In its decision, the Department

oversimplifies and impermissibly disregards the differences in the

chemical compositions of the two products in question and

misconstrues the term "physical form" as it is intended to be used in

the language of the orders. Memorandum, 30.

Commerce has misused and misinterpreted the reference to "all

physical forms," to include products that have a different chemical

description or structure. The common meaning of "form" in the phrase,

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

"ammonium sulfate in all forms" is described in the Investigative

documents and ITC report as consisting of pellets and an aqueous

form. Even a casual examination of the Administrative Record

establishes that under the industry standards, [15]N enriched isotopic

ammonium sulfate is not the subject of the investigation. It is noted

that the Defendant has not provided any evidence in the record that

the industry considers [15]N enriched isotopic ammonium sulfate to be

the same as the ammonium sulfate described by the Scope.

The Government claims that certain definitions and investigative

documents were not presented to Commerce at the administrative level

and are therefore not a part of the record before this Court. Def Resp

17. These assertions are not correct. As part of the Appendix, admitted

as part of the record, the *ITC Conference Transcript re Ammonium*

*sulfate from China* references the "forms" of ammonium sulfate:

> [Mr. David Goldfine of the ITC]
> 21 …do customers and
> 22 producers perceive all forms of ammonium sulfate as similar,
> 23 or not?
>
> [Mr. Stephen Vaughn, Attorney for Petitioner]
> 2 I think in terms of customer and producer

12

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

    3 perception, basically as was <u>described the two forms, the</u>
    4 <u>granular and the standard,</u> are often made on the same
    5 facilities, and often made by the same equipment and the
    6 same people.

Pages 49-50 [Appx1217-1218]

and

[Mr. Stephen Vaughn, Attorney for Petitioner]
    6 …ammonium sulfate is
    7 regarded as a distinct fertilizer, a distinct chemical with
    8 its own market and its own distribution, and its own sales,
    9 whichever form that it's in. It's always thought of as
    10 ammonium sulfate and sold as ammonium sulfate and used as
    11 ammonium sulfate.

Page 62 [Appx 1230]

The ITC conference transcript includes a discussion on the

various forms and grades of ammonium sulfate, as used for fertilizers.

Appx 1180, 1195-1196, 1218-1224, 1227-1229, 1235-1237, 1240-1241.

The petition and investigative documents notably do not include any

references to the inclusion of $^{15}N$ enriched ammonium sulfate, isotopes

of ammonium sulfate, or ammonium sulfate used for laboratory

purposes.

    The Government asserts that Cambridge should have provided

dictionary definitions of "physical forms" in its scope application (Def

13

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

Resp 17-18), but the investigative documents clearly state the various

forms and grades of ammonium sulfate that were the subject of the

Petition, investigation, and Orders. Cambridge provided definitions

and detailed explanations of isotopes, which afforded relevant

explanation of $^{15}$N enriched ammonium sulfate, as part of its scope

application. The Government seems to deliberately overlook the

scientific understanding of isotopes and how they differ from their

constituent chemicals.[6] It is important to note that when Commerce

seeks to include enriched isotopes in scope language, it does so. For

example, the scope of the antidumping duty investigation of *Uranium*

*from Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine, and*

*Uzbekistan* (57 Fed. Reg. 23,380, June 3, 1992) includes:

> [N]atural uranium in the form of uranium ores and
> concentrates; natural uranium metal and natural
> uranium compounds; alloys, dispersions (including
> cermets), ceramic products and mixtures containing
> natural uranium or natural uranium compounds;
> uranium <u>enriched</u> in U235 and its compounds; alloys,
> dispersions (including cermets), ceramic products, and

---

[6] The Department of Energy appreciates that "[t]he addition of even
one neutron can dramatically change an isotope's properties."
Appx1164-1166

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

> mixtures containing uranium <u>enriched</u> in U235 or
> compounds or uranium <u>enriched</u> in U235. [Emphasis
> added.]

The scope language for the ammonium sulfate Orders includes no reference to the $^{15}N$ enriched form of ammonium sulfate, which has a different chemical description than ammonium sulfate identified in the Orders.

The Government argues that under the plain language of the scope determination, $^{15}N$ enriched ammonium sulfate is covered by the Orders, also pointing out that although the CAS registry provides a separate number for $^{15}N$ enriched ammonium sulfate, the written description of the Orders controls and the CAS registry number is not dispositive. Def Resp 5-6, 7-8, 21-22. A CAS Registry Number is a unique numerical identifier assigned by the American Chemical Society to a specific chemical substance allowing for clear identification of a compound regardless of its different names or variations in different regions. Memorandum, 30. Taken together, the chemical nomenclature $(NH_4)_2SO_4$ and the CAS registry number of 7783–20–2 provided in the scope of the Orders clearly and unambiguously

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

establishes that Cambridge's $^{15}$N isotopically enriched ammonium

sulfate (chemical nomenclature ($^{15}$NH$_4$)$_2$SO$_4$), with a CAS number of

43086-58-4) is a different chemical from ammonium sulfate described

in the scope language and thus not within the scope of the Orders. The

distinction between the two products is significant and meaningful, as

it would not be possible for non-enriched ammonium sulfate to be used

for metabolic labeling in quantitative proteomics.

The Government asserts that Cambridge "relies on the end use of

its $^{15}$N-enriched ammonium sulfate to argue that it is not covered by

the scope." Def Resp 19. This misunderstands Cambridge's position

that the Department ignored or otherwise disregarded how the trade

and industry *refer* to ammonium sulfate. Though the scope description

is not limited to particular end uses for ammonium sulfate, the purpose

of the Orders is relevant when making a scope determination. The

courts have "recognized the importance of considering context,

including industry custom, when interpreting written language."

*Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88

(Fed. Cir. 2012) (quoting *Arcelormittal Stainless Belg. N.V. v. United*

16

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

*States*, 35 C.I.T. 796, 808 (2011 Ct. Intl. Trade)). Thus, the Department

is obligated to consider "the way the language of the order is used in

the relevant industry." *Id.*

    The original petition, brought by domestic producers of

ammonium sulfate used for fertilizer, was concerned about the material

injury by reason of importation of ammonium sulfate from China used

for fertilizer. The purpose of the Orders, therefore, is to curb imports of

ammonium sulfate used for fertilizer, not to inhibit the import of an

enriched isotope of ammonium sulfate used for metabolic labeling in

quantitative proteomics. There is no possibility that the importation of

$^{15}$N-enriched ammonium sulfate would affect the domestic ammonium

sulfate industry because it is not used as fertilizer, and it would be

entirely cost-prohibitive to do so.

    The Government's attempt to differentiate *Arcelormittal* is

unconvincing. In *Arcelormittal* the Federal Circuit agreed with the

Government that "antidumping orders should not be interpreted in a

vacuum devoid of any consideration of the way the language of the

order is used in the relevant industry." *Arcelormittal* v. *U.S.* 694 F.3d

17

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

at 88. To do so creates ambiguity and arbitrary conclusions as to what the plain language of the Order means. Because the primary purpose of an antidumping order is to place foreign exporters on notice of what merchandise is subject to duties, the terms of an order should be consistent, to the extent possible, with <u>trade usage</u>. *Id.*

The considerable and unrefuted evidence presented by Plaintiff to the Department at the administrative level is relevant and demonstrates that the trade and industry do not consider $^{15}$N isotopically enriched ammonium sulfate used for laboratory research to be ammonium sulfate, which is used as a fertilizer. Despite their similarities in name, they are different in a key aspect of their chemical composition. This difference in chemical composition is not inconsequential, and Cambridge's $^{15}$N isotopically enriched ammonium sulfate is <u>unambiguously</u> out-of-scope. The language applied in the scope of the Orders does not specifically include the subject merchandise and cannot be reasonably interpreted to include it.

18

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

**B.    If the Scope Language is Ambiguous with Respect to Its Inclusion of Cambridge's $^{15}N$ Isotopically Enriched Ammonium Sulfate the Department Must Consider the K-1 Factors**

The government asserts that Commerce was not required to analyze additional (k)(1) sources because the plain language of the Orders answered the scope question. Def Resp 24. In the administrative proceedings, the Department relied on its conclusion that Cambridge's $^{15}N$ isotopic enriched ammonium sulfate was unambiguously described by the scope of the Orders and did not conduct a section 351.225 (k)(1) analysis. Appx1318.

Plaintiff, however, has conclusively established that this is not the case, and in fact, the language of the scope of the Orders is dispositive in determining whether CIL's enriched $^{15}N$ ammonium sulfate is <u>not</u> within the scope of the Orders.

Assuming arguendo, the language of the Orders is ambiguous with regards to its intention with respect to Cambridge's $^{15}N$ isotopically enriched ammonium sulfate, the Department did not conduct a section 351.225(k)(1) analysis. When there is ambiguity as to whether the language of an order includes the subject

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

merchandise, the Department must consider whether the

§ 351.225(k)(1) sources are <u>dispositive</u> of the issue.  To be dispositive,

the (k)(1) sources "must be 'controlling' of the scope inquiry in the

sense that they must <u>definitively answer the scope question</u>":

> [If] the description of the merchandise contained in the
> antidumping petition, the initial investigation by
> Commerce and the Commission, and the determinations
> of Commerce and the Commission -- are not
> "dispositive," then Commerce must, in issuing its scope
> ruling, "further consider" the criteria set forth in section
> 351.225(k)(2). "<u>Dispositive" means "[h]aving the quality
> or function of directing, controlling, or disposing of
> something."</u> *Oxford English Dictionary* (2d ed. 1989); see
> *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1351
> (Fed. Cir. 2006) (consulting dictionaries to construe
> statutory terms). For present purposes, it seems to us
> that "controlling" is the key part of the definition. Thus,
> we think that to be "dispositive," the section
> 351.225(k)(1) criteria must be "controlling" of the scope
> inquiry in the sense that they definitively answer the
> scope question.  [Emphasis added.]

*Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007)

In this case, the Department relied solely on its conclusion that

Cambridge's $(^{15}NH_4)_2SO_4$ ammonium sulfate is unambiguously included

within the scope of the Orders. Final Scope Ruling, page 5. Appx1318.

20

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

"Whether an ambiguity exists is a question of law that the court

reviews de novo." *Meridian Prods.*, 851 F.3d at 1382. If the Court

decides that the scope is ambiguous as to whether it includes $^{15}N$

isotopically enriched ammonium sulfate, Commerce must move to step

two, and make a determination, based on a (k)(1) factor analysis,

whether there is sufficient evidence on the record, <u>taken as a whole</u>, to

support the conclusion that Cambridge's $^{15}N$ isotopic enriched

ammonium sulfate is "definitively"[7] within the scope of the order.

 The language of the scope is ambiguous because it only references

ammonium sulfate in a single chemical nomenclature of $(NH_4)_2SO_4$,

with a CAS number of 7783-20-2. As plaintiff demonstrated in the

Memorandum and reiterates here, an ammonium sulfate isotope exists

with a different chemical nomenclature of $(^{15}NH_4)_2SO_4$, and a different

CAS number of 43086-58-4. "[T]he bar to justify a finding of ambiguity

in the scope language is a low barrier." *Kirovo-Chepetsky Khimichesky*

*Kombinat, JSC v. United States*, 58 F. Supp. 3d 1397, 1404 (Ct. Intl.

---

[7] *Polites v. United States*, 755 F. Supp. 2d 1352 (Ct. Intl. Trade 2011).

21

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

Trade 2015), quoting *Novosteel SA v. United States*, 284 F.3d 1261,

1272 (Fed. Cir. 2002). As such, the scope of the order can be considered

confusing (or ambiguous) because it does not have a "single clearly

defined or stated meaning," *Meridian Prods*., 851 F.3d. at 1381 n.7

(Quoting *Novosteel*) thus requiring a (k)(1) analysis.  The (k)(1) sources[8]

───────────────────

[8] 19 CFR 351.225(k)(1)(2024) provides:

Scope rulings.

(1) In determining whether a product is covered by the scope of the order at issue, the Secretary will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive.

(i) The following primary interpretive sources may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary:

(A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;

(B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;

(C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and

(D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

(ii) The Secretary may also consider secondary interpretive sources under paragraph (k)(1) introductory text of this section, such as any other determinations of the Secretary or the Commission not identified above, Customs rulings or determinations, industry usage, dictionaries, and any other relevant record evidence.

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

include the description of the merchandise considered by Commerce

and the Commission when crafting the scope, as well as previous

determinations made by Commerce and the Commission. *Hardware*

*Res., Inc. v. United States*, 2024 Ct. Intl. Trade LEXIS 139, *12 (citing

19 CFR § 351.225(k)(1)(i) and *Meridian*, 851 F.3d at 1382).

The Government asserts that because Cambridge did not make a

(k)(1) argument in its scope application and explain what (k)(1) sources

it believes support its views, it failed to exhaust its administrative

remedies. Def. Reply 22-23. Plaintiff, response is two-part.  First, there

have been no previous determinations by Commerce concerning the

scope of the Orders on Ammonium Sulfate, and any reference or

discussion of isotopically enriched nitrogen in Ammonium Sulfate is

non-existent in both Commerce's and the USITC's investigation

documentation.

Second, Cambridge's scope application addressed portions of the

USITC investigation, which is one of the (k)(1) interpretive sources:

> The transcript of the Final Report on the
> Investigation 701-TA-562 and 731-TA-1329, Ammonium
> Sulfate from China, page I-3 states "Ammonium sulfate is

23

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

used primarily as a fertilizer, particularly in situations
where there is a need for supplemental nitrogen and
sulfur to meet the nutritional requirements of growing
plants or trees". And on page I-8, the report states "Based
upon the scope set forth by the Department of Commerce,
information available to the Commission indicates that
the merchandise subject to these investigations is
provided for in subheading 3102.21.00 of the Harmonized
Tariff Schedule of the United States ("HTS"), a provision
naming this compound as a nitrogenous mineral or
chemical fertilizer". Heading 3102 provides for "Mineral
or chemical fertilizers, nitrogenous". [15]N enriched
ammonium sulfate has no known uses as commercial
fertilizer or soil supplement and is not classified under
the provisions for nitrogenous fertilizers.

Part IV-4 Apparent US Consumption states nine US
importers of fertilizer-grade ammonium sulfate. Of the
nine importers, and accordingly, to research on their
respective websites, none of the companies imports [15]N
enriched ammonium sulfate.

Table III-3 US Producers of Ammonium Sulfate and
in review of their company website also shows no
production of [15]N enriched ammonium sulfate.

Footnote I-3 of the report states "Most producers
indicated that the end uses of their ammonium sulfate
are primarily for agricultural, or fertilizer uses."

[15]N enriched ammonium sulfate has never been
imported as a fertilizer."

24

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

 Appx1014 (Plaintiff's Scope Application Request, page 11).

   If the scope of the Order is ambiguous, then it is the

Department's obligation to conduct the (k)(1) analysis, and to

"definitively answer the scope question"[9] of whether the scope of the

order was intended to include enriched ammonium sulfate with a

chemical nomenclature of $(^{15}NH_4)_2SO_4$ and a CAS registry number of

43086-58-4.  Recently, in *Star Pipe Prods., v. U.S.*, the court remanded

a scope determination, in part, because "no portion of the petition has

been placed on the administrative record of this case, indicating

further that Commerce failed to consider it, despite the requirement in

351.225(k)(l) that it do so." *Star Pipe Prods, v. United States*, 365 F.

Supp. 3d 1277, 1282 (Ct. Intl. Trade, 2019). In fact, in *Star Pipe Prods*,

the court concluded that Commerce failed to comply with its obligation

_____

[9]  *Polites v. United States*, 755 F. Supp. 2d 1352 (Ct. Intl. Trade 2011)
at 1355 ("the (k)(1) sources "must be 'controlling' of the scope inquiry in
the sense that they definitively answer the scope question."). *Midwest
Fastener Corp. v. United States*, 335 F. Supp. 3d 1355 (Ct. Intl. Trade
2018) at 1358 (citing *Polites* at 1355 (quoting *Sango Int'l L.P. v. United
States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007)). See also Appx1010-1011
(Plaintiff's Scope Application Request, pages 7-8).

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

to give fair and adequate consideration of each of the (k)(1) factors:

<u>4. The Final Scope Ruling Must Be Remanded for Reconsideration</u>

The court concludes that Commerce failed to comply with its regulation when it reached a decision to place Star Pipe's flanges in the scope of the Order without considering the antidumping duty petition. In addition, Commerce failed to give fair and adequate consideration to record evidence contained in the final injury determination of the ITC that detracts from its conclusion. As a result of these failures, the Final Scope Ruling cannot be shown to be supported by substantial evidence contained on the record as a whole.

<u>a. By Failing to Consider the Descriptions of the Merchandise Contained in the Petition, Commerce Did Not Comply with 19 C.F.R. § 351.225(k)(1)</u>

The Department's regulation requires that the Secretary of Commerce "take into account . . . [t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225 (k)(1). The "analysis" portion of the written determination, *Final Scope Ruling* 10-13, makes no mention of analyzing the merchandise descriptions in the petition and, to the contrary, indicates that Commerce did not consider the petition at all. *See Final Scope Ruling* 10 ("For this scope proceeding, the Department examined the language of the *Order*, the description of the products contained in Star Pipe's scope ruling request, and prior scope determinations."). <u>The</u>

26

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

> <u>court notes, further, that no portion of the petition has
> been placed on the administrative record of this case,
> indicating further that Commerce failed to consider it,
> despite the requirement in § 351.225(k)(1) that it do so.</u>
>
> *        *        *
>
> In conclusion, Commerce did not comply with its
> regulation, 19 C.F.R. § 351.225 (k)(1), when it failed to
> consider  [*1283]  the merchandise descriptions in the
> petition in response to petition-related arguments Star
> Pipe made in the Scope Ruling Request. The court,
> therefore, must order Commerce to consider the
> merchandise descriptions in the petition and the
> arguments Star Pipe made regarding them. The court will
> order defendant to place on the record the petition or
> portions of the petition that Commerce reviews.

*Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277, 1282-1283.  As

in *Star Pipe*, the Department has not put forth any information from

the Petition or the Investigation that would support its determination

that enriched ammonium sulfate with a chemical nomenclature of

$(^{15}NH_4)_2SO_4$ with a CAS registry number of 43086-58-4 was intended to

be included in the scope of the Orders.  Likewise, in *TMB 440AE, Inc.*

*v. United States*, 399 F. Supp. 3d 1314, (Ct. Intl. Trade 2019), the court

explained that Commerce is required to consider the (k)(1) criteria:

27

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

> ### III. Commerce Did Not Act in Accordance with its Regulation in Assessing Whether AEC Pipe is Subject Merchandise Under the Orders.
>
> Commerce found that the language of the Orders was unambiguous and decided not to consider the criteria of 19 C.F.R. § 351.225 (k)(1) ….
>
> *        *        *
>
> Commerce is incorrect in finding that it need not consider the (k)(1) criteria in this case. The government relies heavily on the Court of Appeals for the Federal Circuit's ("CAFC") decision in *Meridian* to support its argument that Commerce did not need to consider the (k)(1) criteria. See Def. Br. at 9-12; *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017). As the court has stated previously, Meridian is considerably narrower than the government asserts. See *Atkore Steel Components, Inc. v. United States*, 313 F. Supp. 3d. 1374, 1380-1382, SLIP OP. 2018-52 (Ct. Intl. Trade 2018) (stating that Meridian must be read in the light of what "the court actually did based on particular facts"). [Footnote omitted.]

*TMB 440AE, Inc. v. United States*, 399 F. Supp. 3d 1314, 1319-1320

(Ct. Intl. Trade 2019)

If the court concludes that the language of the scope is <u>ambiguous</u> with respect to the inclusion of $(^{15}NH_4)_2SO_4$ in the scope of the Orders, then the matter must be remanded to the Department for further

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

consideration, as required by § 351.225(k)(1).[10]

As demonstrated by Plaintiff, its isotopic $^{15}N$ ammonium sulfate is significantly and chemically different, and otherwise unlike the ammonium sulfate that is the subject of the Orders, and the Department has impermissibly expanded the scope of the Orders to include out-of-scope merchandise.

If the scope language is ambiguous with regard to the inclusion of the subject merchandise, then it is expected that Commerce gives fair and adequate consideration to the (k)(1) criteria, to resolve that ambiguity.  Any such determination, however, would have to "definitively answer the scope question" of whether the Orders were intended to include enriched ammonium sulfate with a chemical description of $(^{15}NH_4)_2SO_4$ and a CAS registry number of 43086-58-4.

A proper analysis based upon Department Regulations and judicial precedent will lead this Court to conclude that based on the plain meaning of the Orders, Cambridge's $^{15}N$ isotopically enriched

---

[10] 19 C.F.R. § 351.225(k)(1) (2024).

29

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

ammonium sulfate is not the merchandise described in the Orders and

accordingly, **<u>not the subject of</u>** the Antidumping Duty Orders on

Ammonium Sulfate from China.


## II.    CONCLUSION

For all of the reasons set forth above, this Court must find that

Cambridge's $^{15}$N enriched ammonium sulfate is <u>unambiguously</u> outside

the scope of the China Ammonium Sulfate Orders. Cambridge

respectfully requests this Court remand this matter to Commerce with

instructions to issue a determination excluding $^{15}$N enriched

ammonium sulfate from the scope of the Ammonium Sulfate Orders.

Alternatively, if the court finds that there is <u>ambiguity</u> in the

language of the Orders with respect to its inclusion of its $^{15}$N

ammonium sulfate, this Court must remand the matter to Commerce

with instructions to conduct its C.F.R. § 351.255(k)(1) analysis.


Dated: January 23, 2025        Respectfully submitted,

<u>/s/ George R. Tuttle III</u>
George R. Tuttle, III
Law Offices of George R. Tuttle, A.P.C.

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

3950 Civic Center Drive, Ste 310
San Rafael, CA 94903
Direct: (415) 288-0428
Email: geo@tuttlelaw.com
*Attorney for Cambridge Isotope Laboratories*

31

Cambridge Isotope Laboratories v. United States
Court No. 23-00080

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies

that this brief complies with the word limitation requirement. The

word count for *Plaintiff's Reply to Defendant Response to Plaintiff's*

*Rule 56.2 Motion for Judgement Upon the Agency Record*, as computed

by Law Office of George R. Tuttle word processing system Microsoft

Word 365 ProPlus, is 5,614 words, less than the 7,000 word limit.

*/s/ George R. Tuttle III*
George R. Tuttle III
*Counsel for Plaintiff*

Dated: January 23, 2025

4933-2240-4108, v. 2