**Slip Op. 26-27**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 23-00080**

CAMBRIDGE ISOTOPE LABORATORIES, INC.,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*.

Before: M. Miller Baker, Judge

**OPINION**

[Remanding the Department of Commerce's scope ruling.]

Dated: March 11, 2026
Amended: March 16, 2026

*George R. Tuttle, III*, Law Offices of George R. Tuttle, A.P.C., San Rafael, CA, on the briefs for Plaintiff.

*Daniel Bertoni*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the brief for Defendant. Of counsel for Defendant was *Ruslan N. Klafehn*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Baker*, Judge: An importer challenges the Department of Commerce's determination that the company's product is within the scope of antidumping and countervailing duty orders covering ammonium sulfate from China. The court remands because the agency's decision is contrary to law.

I

Due to the nature of the marketplace and the "ever-changing varieties of merchandise," *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1315 (Fed. Cir. 2024), questions sometimes arise "as to whether a particular product is subject to" an antidumping or countervailing duty order. Congress has accordingly authorized the Department to decide "whether a particular type of merchandise is within the class or kind of merchandise described in an existing . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi).

An implementing regulation establishes the relevant procedures. *See* 19 C.F.R. § 351.225.[1] It allows an "interested party" to ask Commerce to "determine whether a product . . . is covered by the scope of an order." *Id.* § 351.225(c)(1). It also prescribes what information the applicant must provide. *Id.* § 351.225(c)(2). It then sets out "a multi-part regulatory framework" for the agency to follow in deciding whether the product is in-scope. *Vandewater Int'l, Inc.*

---

[1] Commerce amended § 351.225 in September 2023 and March 2024, but those revisions are not relevant here.

Ct. No. 23-00080 Page 3

*v. United States*, 130 F.4th 981, 984 (Fed. Cir. 2025) (citing 19 C.F.R. § 351.225 generally).

That framework directs the Department to "consider the language of the scope." 19 C.F.R. § 351.225(k)(1). Commerce "may make its determination on this basis alone if the language of the scope . . . is dispositive." *Id.* But in evaluating the scope language, the agency also has "discretion" to consider certain "primary interpretive sources" and "secondary interpretive sources." *Id.* § 351.225(k)(1)(i), (ii). The agency need not "first determine whether the scope language is clear on its face before turning to" these "(k)(1)" sources. *Magnum Magnetics Corp. v. United States*, — F.4th —, 2026 WL 438170, at *4 (Fed. Cir. Feb. 17, 2026).[2]

The primary sources are descriptions of the merchandise in the original petition that led to the duty order, descriptions of the goods in the initial investigation resulting in the order, previous or concurrent

---

[2] Earlier Federal Circuit case law described the step of analyzing whether the order's language is unambiguous "as the '(k)(0)' inquiry because it precedes the analyses under sections (k)(1) and (k)(2) of [the] regulation." *Vandewater*, 130 F.4th at 984–85 (citing *Meridian Prods. LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017)). *Magnum Magnetics*, however, explains that those cases interpreted a pre-2021 version of § 351.225 and "do not control Commerce's consideration of the (k)(1) [sources]" under the current regulation. — F.4th —, 2026 WL 438170, at *5. The court held that the Department "has the discretion to consider (k)(1) [sources] in assessing the meaning of the scope language, regardless of whether the language appears to be ambiguous or not." *Id.* at *6.

Commerce decisions (including scope rulings and other orders with the same or similar language), and International Trade Commission determinations "pertaining to the order at issue." 19 C.F.R. § 351.225(k)(1)(i).

The secondary sources are Commerce or Commission determinations not listed in (k)(1)(i), Customs rulings or determinations, industry usage, dictionaries, "and any other relevant evidence." *Id.* § 351.225(k)(1)(ii). In the event of any conflict, the primary sources "will normally govern in determining whether a product is covered by the scope of the order at issue." *Id.*

If the plain language and the (k)(1) sources do not resolve the matter, Commerce may consider five "(k)(2) factors"—the product's physical characteristics, the ultimate users' expectations, the product's ultimate use, the channels of trade in which it is sold, and the manner in which it is advertised and displayed. 19 C.F.R. § 351.225(k)(2)(i)(A)–(E). "The (k)(2) criteria help to determine whether a product is sufficiently similar as merchandise unambiguously within the scope of an order as to conclude the two are merchandise of the same class or kind." *Vandewater*, 130 F.4th at 985 (cleaned up). Paragraph (k)(2)(ii) adds that if the (k)(2) factors conflict, the product's physical characteristics (the (k)(2)(i)(A) criterion) "will normally be allotted greater weight than the other factors." 19 C.F.R. § 351.225(k)(2)(ii).

The two parts of the regulation differ in a critical respect. In setting out the primary and secondary

interpretive sources, paragraph (k)(1) gives the Department discretion to consider the ones it deems appropriate—it need not consider all of them. *See id.* § 351.221(k)(1)(i) ("The following primary interpretive sources *may be taken into account . . . at the discretion of the* [agency.]") (emphasis added); *id.* § 351.221(k)(1)(ii) ("[Commerce] *may also consider* secondary interpretive sources . . . , *such as* [non-exclusive list follows].") (emphasis added). But paragraph (k)(2) offers no such flexibility. Its language is mandatory: "If the [Department] determines that the sources under paragraph (k)(1) of this section are not dispositive, [it] *will* then further consider the following factors[.]" *Id.* § 351.225(k)(2)(i) (emphasis added).

## II

In 2017, Commerce issued antidumping and countervailing duty orders covering ammonium sulfate from China. *See* 82 Fed. Reg. 8403; 82 Fed. Reg. 4850. They apply to

> ammonium sulfate in all physical forms, with or without additives such as anti-caking agents. Ammonium sulfate . . . has the chemical formula $(NH_4)_2SO_4$.
>
> . . . .
>
> The Chemical Abstracts Service ("CAS") registry number for ammonium sulfate is 7783–20–2.
>
> . . . . Although this . . . CAS registry number [is] provided for convenience and customs purposes,

the written description of the scope of the orders is dispositive.

Appx1150–1151.

Cambridge Isotope Laboratories imports "enriched $^{15}N$ ammonium sulfate isotope" from China. Appx1001. In 2022, the company requested that Commerce opine that this compound is outside the orders' scope. *Id.*

Cambridge explained that the isotope's formula is $(^{15}NH_4)_2SO_4$, while "naturally abundant" ammonium sulfate has the formula $(NH_4)_2SO_4$. Appx1007. The latter formula is referred to in the duty orders; the former is not—at least, not explicitly, a matter discussed further below. *See* Appx1150. The importer stated that the difference between the two substances is that its blend is "enriched with a $^{15}N$ nitrogen atom, making it physically a different product with a different molecular weight." Appx1012. The company also emphasized that the enriched version has a CAS registry number of 43086–58–4, unlike the standard sulfate's 7783–20–2, which it said "reflects the difference between it and [a]mmonium sulfate with a chemical formula of $(NH_4)_2SO_4$." *Id.* It said the enriched sulfate's primary use is for laboratory research and contrasted that to the standard compound's use as a commercial mineral or chemical fertilizer. Appx1007–1008.

In contending that its enriched product is out-of-scope, Cambridge pointed to the chemical formula, the product's physical characteristics, user expectations, ultimate use of the product, channels of trade, and the

manner of advertising and display. Appx1009–1010. Although it did not cite the regulation as part of that discussion, the paragraph headings plainly reflected the (k)(2) factors with only minor wording differences. *Compare id.* (headings) *with* 19 C.F.R. § 351.225(k)(2)(i)(A)–(E).

Commerce found the enriched ammonium sulfate in-scope and purported to do so based on the duty orders' language, which it observed "plainly states that the Orders cover 'ammonium sulfate in all physical forms.'" Appx1318 (quoting Appx1150). Cambridge, in turn, did "not argue that its enriched $^{15}$N ammonium sulfate is not ammonium sulfate." *Id.* Rather, the company stated that "its product is ammonium sulfate, but enriched with a nitrogen atom," and explained that the standard compound naturally contains $^{15}$N and the enriched form simply has more of it. *Id.* The agency thus concluded that $(NH_4)_2SO_4$ already contains $^{15}$N. *Id.* Because the only difference is that Cambridge's enriched product contains a higher concentration, it "is still ammonium sulfate, and the scope of the Orders includes 'ammonium sulfate in all physical forms.'" *Id.*

The agency brushed aside the company's argument about the different CAS registry numbers because "the written description of the scope of the Orders is dispositive." *Id.* (quoting Appx1151). It also found it unnecessary to consider Cambridge's arguments about how the enriched product is used—one of the (k)(2) factors. This was because (in its view) it resolved the matter based on the orders' plain language, as illuminated by "the description of the product contained in the scope

ruling request," *id.*—a (k)(1) source, *see* 19 C.F.R. § 351.225(k)(1)(i)(A).

### III

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), Cambridge sued under 19 U.S.C. § 1516a(a)(2)(B)(vi) to challenge the scope ruling. The parties have fully briefed Cambridge's motion for judgment on the agency record, which is ripe for decision.

The court "will uphold Commerce's scope determinations unless they are unsupported by substantial evidence or otherwise not in accordance with law." *Magnum Magnetics*, — F.4th —, 2026 WL 438170, at *3 (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)).

### IV

Cambridge attacks Commerce's decision on multiple grounds, but the court need only consider one.[3] The importer contends that the evidence it presented to the agency shows that "trade and industry do not consider *15*N isotopically enriched ammonium sulfate used for

---

[3] The government also moves to strike a Customs classification ruling attached to Cambridge's reply brief that is not part of the administrative record. *See* ECF 41, at 1. The court denies the motion as unnecessary to decide because remand is required without regard to the importer's arguments based on the attachment.

Ct. No. 23-00080 Page 9

laboratory research to be ammonium sulfate, which is used as fertilizer." ECF 37-2, at 19 (emphasis in original). "Despite their similarities in name," these two compounds "are different in their chemical composition." *Id*. The Department failed to consider this argument because it purported to rely on the "plain language of the scope of the Orders" and "the description of the product contained in the scope ruling request," Appx1318—the latter being a (k)(1)(i) source.

The court reviews agency action based on its substance, not its form or label. *See, e.g.*, *Mattel, Inc. v. United States*, 377 F. Supp. 955, 963 (Cust. Ct. 1974) (Maletz, J.) (treating matter as a 19 U.S.C. § 1514 protest when Customs's ruling said the agency was reviewing it under 19 U.S.C. § 1520(c) but actually applied the factors relevant under § 1514); *Ctr. for Envt'l Health v. Ragan*, 103 F.4th 1027, 1034 (4th Cir. 2024) (stating that court does "not accept as definitive" an agency's "characterization of its decision" and that instead court looks to "the *contents*" of the action) (emphasis in original) (citing *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019)).

Labels aside, Commerce grounded its decision on the chemical composition of Cambridge's product. The agency found that because both ammonium sulfate and the importer's enriched sulfate contain $^{15}$N, the latter is in-scope. Appx1318. "Therefore, based on record evidence, by definition enriched $^{15}$N ammonium sulfate is still ammonium sulfate, and the scope of the Orders includes 'ammonium sulfate in all physical forms.'" *Id.*

The problem is that the "physical characteristics (*including chemical . . . characteristics*) of the [importer's] product" is a (k)*(2)* factor. *See* 19 C.F.R. § 351.225(k)(2)(i)(A).[4] But the Department expressly declined to consider Cambridge's arguments about other (k)(2) factors. *See* Appx1318 ("Commerce finds it unnecessary to consider the arguments [the company] raises regarding the end uses of enriched $^{15}$N ammonium sulfate.").

That was contrary to law because the regulation does not permit the agency to pick and choose which of the (k)(2) factors it considers—they're one for all and all for one. *See* 19 C.F.R. § 351.225(k)(2)(i) ("[T]he [Department] *will* then further consider the following factors[.]") (emphasis added). And the regulation requires weighing those five criteria and provides that, in the event of a conflict between them, the "physical characteristics" "will normally be allotted greater weight"

---

[4] The court acknowledges that Commerce stated that it relied on "the description of the product contained in the scope ruling request"—a (k)(1) source, *see* 19 U.S.C. § 351.225(k)(1)(i)(A)—to illuminate the orders' scope language. Appx1318. But to read that general provision as including the "physical characteristics (including chemical . . . characteristics) of the [importer's] product" would negate the more specific § 351.225(k)(2)(i)(A). Under the general/specific canon, the latter clause must prevail over the former. That's because "the specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence." Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). But only § 351.225(k)(1)(i)(A)'s "application to cases covered by" § 351.225(k)(2)(i)(A) "is suspended; it continues to govern all other cases." *Id.* at 184.

**Ct. No. 23-00080** **Page 11**

than the others. *Id.* § 351.225(k)(2)(ii). Because Commerce neither considered the other four (k)(2) factors—despite addressing one, and despite Cambridge having discussed them in its scope ruling application, *see* Appx1010—nor balanced them against each other, the court must send this matter back to the agency's drawing board. If the Department looks to the (k)(2) factors on remand, it must consider all of them.

\* \* \*

The court remands for further proceedings consistent with this opinion.

Dated: March 11, 2026        /s/ *M. Miller Baker*
        New York, NY            Judge