A-570-049
C-570-050
Remand: Scope Inquiry
Court No. 23-00080
**Public Document**
E&C/OIV: CB

***Cambridge Isotope Laboratories, Inc. v. United States,***
**Slip Op. 26-27, Ct. No. 23-00080 (CIT)**
**Ammonium Sulfate from the People's Republic of China**

**Final Results of Redetermination**
**Pursuant To Court Remand**

## I.    SUMMARY

Pursuant to the Order of the U.S. Court of International Trade (Court) in *Cambridge Isotope Laboratories, Inc. v. United States*, CIT No. 23-00080, Slip Op. 26-27 (CIT March 11, 2026, amended March 16, 2026) (*Remand Order*), concerning the U.S. Department of Commerce's (Commerce) final scope ruling on Cambridge Isotope Laboratories, Inc.'s (CIL) enriched $^{15}$N ammonium sulfate[1] isotope under the antidumping duty (AD) and countervailing duty (CVD) orders on ammonium sulfate from the People's Republic of China (China), we have prepared these final results of redetermination.  In its decision, the Court remanded Commerce's scope ruling for further proceedings, finding that Commerce's analysis had only relied upon the physical characteristics of CIL's product, a factor under 19 CFR 351.225(k)(2)(i)(A), while expressly declining to consider the remaining (k)(2) factors.

In accordance with the *Remand Order*, Commerce has reconsidered its scope analysis. Upon reconsideration, Commerce finds that the primary interpretive sources set forth at 19 CFR

---

[1] The terms "enriched $^{15}$N ammonium sulfate" and "$^{15}$N-enriched ammonium sulfate" have been used interchangeably in the present proceeding and both refer to the subject merchandise of these final results of redetermination.

351.225(k)(1), specifically, the scope language of the *Orders*,[2] the descriptions of the merchandise in the petition, and the determinations of the U.S. International Trade Commission (ITC) pertaining to the *Orders* at issue are not dispositive.  As such, Commerce is considering the scope inquiry using the factors as laid out in 19 CFR 351.225(k)(2) for analysis.  Based on our review of those sources and grounding our analysis squarely in (k)(2), Commerce determines that CIL's enriched $^{15}N$ ammonium sulfate isotope is outside the scope of the *Orders*.

## II.    BACKGROUND

On November 11, 2022, CIL filed a scope ruling application requesting that Commerce determine whether its enriched $^{15}N$ ammonium sulfate isotope (ammonium sulfate whose $^{14}N$ nitrogen atom has been enriched with a $^{15}N$ nitrogen atom and is used in quantitative proteomics and laboratory research) is covered by the scope of the *Orders*.[3]  CIL stated that its product bears the chemical formula $(^{15}NH_4)_2SO_4$ and CAS registry number 43086-58-4 and that its enriched product has no known applications such as a commercial mineral or chemical fertilizer.

On March 16, 2023, Commerce issued its final scope ruling, finding CIL's enriched $^{15}N$ ammonium sulfate to be within the scope of the *Orders*.[4]  Commerce based its ruling on the plain language of the *Orders'* scope and the description of the product in the scope ruling request, a (k)(1) source.

CIL filed suit with the Court challenging Commerce's scope ruling.  On March 11, 2026, as amended March 16, 2026, the Court remanded Commerce's scope ruling.  The Court found that, although Commerce purported to rely on the *Orders'* plain language and a 19 CFR

---

[2] *See Ammonium Sulfate from the People's Republic of China: Antidumping Duty and Countervailing Duty Orders*, 82 FR 13094 (March 9, 2017) (*Orders*)
[3] *See* CIL's Letter, "A-570-049 and C-570-050 Ammonium Sulfate from the People's Republic of China: Scope Ruling Application," dated November 11, 2022 (Scope Application) at 10–11.
[4] *See* Scope Ruling.

351.225(k)(1)(i)(A) source, Commerce's analysis in substance turned on the chemical composition of CIL's product, a part of its physical characteristics, which constitutes a 19 CFR 351.225(k)(2)(i)(A) factor.[5]  Because Commerce thereby engaged one (k)(2) factor while expressly declining to consider the other four, the Court found Commerce's determination contrary to the mandatory requirements of 19 CFR 351.225(k)(2)(i), which requires Commerce to consider all five factors if it proceeds to that level of the analysis.[6]  The Court instructed that if Commerce conducts a (k)(2) analysis on remand, it must consider all five factors.[7]

## III.   ANALYSIS

### A.  Application of the (k)(1) Sources

Pursuant to 19 CFR 351.225(k)(1), Commerce first considers the language of the scope of the *Orders*, as well as the primary interpretive sources set forth in 19 CFR 351.225(k)(1)(i), including the descriptions of the merchandise in the petition, the descriptions of the merchandise in the initial investigation, previous or concurrent Commerce determinations pertaining to the *Orders*, and ITC determinations pertaining to the *Orders*.

### 1.  Scope Language

The *Orders* cover "ammonium sulfate in all physical forms, with or without additives such as anti-caking agents," and specify that the chemical formula for ammonium sulfate is $(NH_4)_2SO_4$ and the CAS registry number is 7783-20-2.  CIL's product bears the distinct chemical formula $(^{15}NH_4)_2SO_4$ and CAS registry number 43086-58-4.  The scope's written description does not explicitly address isotopically enriched variants, concentrated isotopic forms, or compounds bearing a different CAS registry number.  While the scope states that the written

---

[5] *See Remand Order* at 10.
[6] *Id.*
[7] *Id.* at 11.

description governs over CAS registry numbers and HTSUS subheadings, it does not speak to the question of whether a chemically distinct isotopic compound with a separate CAS registry number and different molecular weight falls within or outside coverage.

### 2. Prior Scope Rulings and Commerce Determinations

No prior Commerce scope ruling under the *Orders*, or under any other order employing the same or similar "ammonium sulfate in all physical forms" language, has addressed isotopically enriched ammonium sulfate or any functionally analogous laboratory isotope product. The (k)(1) sources also direct Commerce to look at the ITC report and any other documents pertaining to the order.[8] Similar to the language of the scope and the language of the investigation, discussed above, neither the ITC report nor any other sources under the (k)(1) discusses "ammonium sulfate in all physical forms" or addresses isotopically enriched variants, concentrated isotopic forms, or compounds bearing a different CAS registry number. This information is critical to the determination of whether enriched $^{15}N$ ammonium sulfate is within the scope of the *Orders*.

### 3. Conclusion on (k)(1) Sources

Commerce determines that the (k)(1) sources are not dispositive with respect to CIL's enriched $^{15}N$ ammonium sulfate. The scope language does not unambiguously resolve the question of whether an isotopically enriched compound with a distinct CAS registry number, distinct chemical formula, and distinct molecular weight is covered. There are no prior scope

---

[8] 19 CFR § 351.225(k)(1)(i)(D), (ii).

rulings with respect to enriched ammonium sulfate and determinations of the U.S. International

Trade Commission (ITC) pertaining to the orders at issue are not dispositive.

### B. Application of the (k)(2) Factors

Because the (k)(1) sources are not dispositive, Commerce has considered the five factors

set forth at 19 CFR 351.225(k)(2)(i)(A)-(E) and considered them in totality.

### 1. Physical Characteristics (19 CFR 351.225(k)(2)(i)(A))

CIL's enriched $^{15}N$ ammonium sulfate is produced through a specialized isotopic

separation and enrichment process that results in a compound in which the $^{14}N$ nitrogen atom has

been enriched with a $^{15}N$ nitrogen atom.[9]  The resulting compound bears the chemical formula

$(^{15}NH_4)_2SO_4$, carries CAS registry number 43086-58-4, and has a molecular weight that is

materially different from that of naturally abundant ammonium sulfate, $(NH_4)_2SO_4$, which carries

CAS registry number 7783-20-2.[10]  These physical and chemical differences are reflected in the

assignment of a separate CAS registry number (*i.e.*, 43086-58-4), which is consistent with the

conclusion that CIL's product is therefore a chemically distinct compound from the ammonium

sulfate addressed in the Orders.

### 2. Expectations of the Ultimate Purchasers (19 CFR 351.225(k)(2)(i)(B))

CIL has represented that trade and industry do not consider $^{15}N$ isotopically enriched

ammonium sulfate used for laboratory research to be ammonium sulfate used as fertilizer.[11]

CIL's expects its enriched $^{15}N$ ammonium sulfate to be used in "laboratories; medical,

government, and academic research centers when performing research.  CIL states that unlike the

ammonium sulfate subject to the scope of the Orders, its enriched ammonium sulfate has no

---

[9] *See* Scope Application at 10-11.
[10] *Id.* at 9 and Exhibit 15.
[11] *Id.* at 3-5, 7, 11, and Exhibit 18.

known applications as a commercial mineral or chemical fertilizer."[12]  Therefore, the expectations of the enriched $^{15}$N ammonium sulfate purchasers are distinct from the expectations of purchasers of the commodity ammonium sulfate that is the subject of the *Orders*.

### 3. Ultimate Use of the Product (19 CFR 351.225(k)(2)(i)(C))

CIL contended that its enriched ammonium sulfate is used in quantitative proteomics and laboratory research.[13]  Specifically, it is incorporated into metabolically active cells and small organisms, or post-metabolically into peptides and proteins by enzymatic or chemical reactions, in order to monitor specific aspects of dynamic proteomes and to enable protein profiling and analysis of protein modifications.[14]  Additionally, CIL contended that, unlike the ammonium sulfate that is the subject of the *Orders*, its enriched ammonium has no applications as a commercial "mineral or chemical fertilizer."[15]  The ultimate uses of CIL's $^{15}$N enriched ammonium sulfate are therefore distinct from the ultimate uses of ammonium sulfate that is the subject of the *Orders.*

### 4. Channels of Trade (19 CFR 351.225(k)(2)(i)(D))

CIL affirmed its enriched $^{15}$N ammonium sulfate is sold to "laboratories; medical, government, and academic research centers."[16]  CIL's Scope Application provides information indicating that "Most producers indicated that the end uses of their {ammonium sulfate that is subject to the *Orders*} are primarily for agricultural, or fertilizer uses."[17]  Additionally, CIL stated that its enriched $^{15}$N ammonium sulfate has never been imported as a fertilizer.[18]  Thus, we

---

[12] *Id.* at 4-5.
[13] *Id.* at 1-3.
[14] *Id.*
[15] *Id.* at 7.
[16] *Id.*
[17] *Id.* at 11.
[18] *Id.*

find the channels of trade by which CIL's enriched [15]N ammonium sulfate are sold are distinct from the channels of trade for the ammonium sulfate that is the subject of the *Orders.*

### 5. Manner in Which the Product Is Advertised and Displayed (19 CFR 351.225(k)(2)(i)(E))

CIL markets and displays its enriched [15]N ammonium sulfate as a stable isotope product for metabolic research on its own website.[19]  Product descriptions emphasize chemical purity, enrichment levels, chemical formula, CAS registry number, and molecular weight.[20]  CIL indicates that the ammonium sulfate that is the subject of the *Orders* is marketed as ammonium sulfate are primarily for agricultural, or fertilizer uses by producers and importers of ammonium sulfate."[21]  The manner in which CIL's enriched [15]N ammonium sulfate is advertised and displayed is therefore distinct from how the ammonium sulfate that is the subject of the *Orders* is advertised and displayed.

### C. Weighing of the (k)(2) Factors

All five (k)(2) factors, considered collectively, weigh in favor of a determination that CIL's [15]N enriched ammonium sulfate is outside the scope of the *Orders*.  CIL's product is physically and chemically distinct from commodity ammonium sulfate addressed in the *Orders,* with a different chemical formula, different CAS registry number, different molecular weight, and a distinct production process; the ultimate purchasers of CIL's product do not regard it as ammonium sulfate used as fertilizer; purchasers of CIL's product use it for laboratory research rather than fertilization; CIL's product moves through specialty scientific supply channels that are entirely separate from agricultural commodity distribution; and CIL's product is marketed and displayed as a laboratory isotope reagent rather than as fertilizer or industrial chemical.

---

[19] *Id*. at 7 and Exhibit 22.
[20] *Id*.
[21] *Id*. at 11.

## V.    INTERESTED PARTY COMMENTS

On June 23, 2025, Commerce released its Draft Results and invited interested parties to comment.[22]  On June 30, 2026, we received comment from CIL,[23] which we have addressed below.

**Comment:    Commerce's Decision to Find $^{15}$N Enriched Ammonium Sulfate Out of Scope Using (k)(2) Analysis**

*CIL's Comment*:

In the Draft Remand Results, Commerce correctly determines that the sources identified in 19 {CFR} 351.225(k)(1) are not dispositive.  Commerce explains that the scope language does not expressly address isotopically enriched variants and does not unambiguously resolve whether a chemically distinct isotopic compound with a separate CAS registry number and different molecular weight is covered. Commerce further notes the absence of prior scope rulings addressing isotopically enriched ammonium sulfate or analogous laboratory isotope products. That analysis is consistent with the regulation and the Court's remand instructions. Commerce also correctly proceeds to the 19 {CFR} 351.225(k)(2) analysis and evaluates all five factors in totality.

First, Commerce correctly finds that the physical characteristics of CIL's product distinguish it from the ammonium sulfate addressed in the *Orders*. The Draft Remand Results explain that CIL's product is produced through a specialized isotopic enrichment process, bears the chemical formula $(^{15}NH_4)_2SO_4$, carries a unique CAS registry number 43086-58-4, and has a materially different molecular weight from naturally abundant ammonium sulfate. Commerce reasonably concludes that these differences support treating the product as chemically distinct from the ammonium sulfate described in the *Orders*.

Second, Commerce correctly finds that the expectations of the ultimate purchasers are distinct. Purchasers of CIL's product seek a specialized isotope-labeled research material for laboratory use, not fertilizer-grade ammonium sulfate. Commerce reasonably concludes that these purchaser expectations differ from those associated with the commodity ammonium sulfate ucovered by the *Orders*.

Third, Commerce correctly finds that the ultimate use of CIL's product is distinct. The Draft Remand Results explain that CIL's $^{15}$N-enriched ammonium sulfate is used in quantitative proteomics and laboratory research, including isotope-labeling

[22] *See* Draft Results of Redetermination Pursuant to Court Remand, *Cambridge Isotope Laboratories, Inc. v. United States*, Slip Op. 26-27, Ct. No. 23-00080, dated June 23, 2026 (Draft Results).
[23] *See* CIL's Letter, "*Comments of Cambridge Isotope Laboratories, Inc. on Draft Results of Redetermination Pursuant to Court Remand*," dated June 30, 2026 (CIL's Comments).

applications, rather than as a commercial mineral or chemical fertilizer. This difference in end use strongly supports exclusion from the scope.

Fourth, Commerce correctly finds that the channels of trade are distinct. CIL's product is sold to laboratories and medical, government, and academic research centers, rather than through the agricultural commodity channels associated with subject ammonium sulfate.

Fifth, Commerce correctly finds that the manner in which the product is advertised and displayed is distinct. CIL markets the product on its website as a stable isotope product for quantitative proteomics and metabolic research, emphasizing research-related specifications, rather than fertilizer or agricultural uses.

Taken together, Commerce's Draft Remand Results provide the full multi-factor analysis required by the Court and are supported by substantial record evidence. Commerce correctly determined that the sources under 19 {CFR} 351.225(k)(1) are not dispositive and then properly considered all five factors under 19 {CFR} 351.225(k)(2). Those factors collectively show that CIL's $^{15}$N-enriched ammonium sulfate is physically and commercially distinct from the commodity ammonium sulfate covered by the Orders. CIL therefore respectfully requests that Commerce adopt the draft results of redetermination and continue to find that CIL's $^{15}$N-enriched ammonium sulfate, with chemical formula $(^{15}NH_4)_2SO_4$ and CAS registry number 43086-58-4, is outside the scope of the antidumping and countervailing duty orders on ammonium sulfate from {China}.

**Commerce's Position:** As explained above, we agree with CIL. Based on the Court's *Remand Order*, we found that the (k)(1) sources are not dispositive with respect to CIL's enriched $^{15}$N ammonium sulfate. Therefore, we conducted a (k)(2) analysis to consider each of the five factors. After analyzing each of the five factors and weighting the factors collectively, we found: (1) CIL's product is physically and chemically distinct from commodity ammonium sulfate; (2) the ultimate purchasers of CIL's product do not regard it as ammonium sulfate used as fertilizer; (3) purchasers of CIL's product use it for laboratory research rather than fertilization; (4) CIL's product moves through specialty scientific supply channels that are entirely separate from agricultural commodity distribution; and (5) CIL's product is marketed and displayed as a laboratory isotope reagent rather than as fertilizer or industrial chemical. Accordingly, we find CIL's enriched $^{15}$N ammonium sulfate is outside the scope of the *Orders*.

9

## VI.    FINAL RESULTS OF REDETERMINATION

In consideration of the Court's *Remand Order*, and upon reconsideration of the applicable (k)(2) sources pursuant to 19 CFR 351.225(k)(2), Commerce determines that CIL's enriched $^{15}N$ ammonium sulfate isotope, with chemical formula $(^{15}NH_4)_2SO_4$ and CAS registry number 43086-58-4, is outside of the scope of *Orders*.

7/9/2026

X _____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance